833 F.2d 1024
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
DYNATRON/BONDO CORP., Plaintiff-Appellee,
v.
FIBRE GLASS EVERCOAT CO., Defendant-Appellant.
 No. 87-1287.
 United States Court of Appeals, Federal Circuit.
 Oct. 23, 1987.
 
 Before MARKEY, Chief Judge, DAVIS and BISSELL, Circuit Judges.
 MARKEY, Chief Judge.
 
 DECISION
 
 1
 Appeal from a judgment and order of the United States District Court for the Southern District of Ohio: (1) holding all claims of Dynatron/Bondo Corp.'s (Dynatron's) U.S. Patent Re. 31,934 ('934 patent), entitled "Disposable Putty Dispenser," valid and enforceable; (2) finding that Fibre Glass-Evercoat Co. (Fibre Glass) had infringed claims 4, 8 and 9 of the '934 patent literally and under the doctrine of equivalents; (3) finding that Fibre Glass had infringed, contributorily infringed, and induced infringement of claims 2, 3, and 5-7; (4) finding Fibre Glass' infringement willful and this an exceptional case justifying an award of increased damages and attorney fees; and (5) enjoining Fibre Glass from further infringement. No. C-1-77-042 (S.D.Ohio March 9, 1987).
 
 
 2
 The parts of the judgment based on holdings of validity and enforceability and the findings of infringement are affirmed. The parts based on findings of willfulness and exceptional case are reversed.
 
 OPINION
 I. Validity
 
 3
 Fibre Glass has shown no error in the district court's conclusion that Fibre Glass "has failed to rebut the presumption of the validity of [the '934] patent." Slip op. at 14. Fibre Glass' attempt to show an identity between the "Marson Miser" and the claimed invention does not overcome the Patent and Trademark Office's (PTO's) determination, with which the district court agreed, that the Marson Miser does not teach using deformable lugs on a container lid so that some lugs deform for air to escape while others remain intact to retain the lid on the container.
 
 
 4
 That the court made no specific finding on the level of ordinary skill in the art does not invalidate its conclusion on obviousness under 35 U.S.C. Sec. 103. Such a finding is not required where, as here, "the prior art itself reflects an appropriate level and a need for testimony is not shown." Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 163-64, 225 USPQ 34, 38 (Fed.Cir.1985); Chore-Time Equip., Inc. v. Cumberland, 713 F.2d 774, 779 n. 2, 218 USPQ 673, 676 n. 2. (Fed.Cir.1983).
 
 
 5
 Fibre Glass has not shown clear error in the court's finding of commercial success. The evidence supports the court's finding and does not create in us a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 6
 Nothing supports Fibre Glass' assertion that "patentability was predicated solely on commercial success." In addition to commercial success, the district court noted the PTO's analysis of the prior art during reissue proceedings, and discounted Fibre Glass' evidence regarding other purported prior art.
 
 II. Enforceability
 
 7
 The record does not support Fibre Glass' assertion that the PTO board opinion, with which the district court agreed, relied "on an erroneous application of the law" in holding that Dynatron's failure to disclose the Marson Miser to the examiner was not inequitable conduct. The board's opinion acknowledges that gross negligence is sufficient for a violation of an applicant's duty under 37 C.F.R. Sec. 1.56(d). Ex parte Marston, No. 570-74, slip op. at 8-9 (PTO Bd.App. Nov. 7, 1984). Consistent with that acknowledgement, the board found "the evidence in [sic, is] not clear and convincing to us that [Dynatron] had knowledge or should have had knowledge of the tie-rod safety feature of the Marson-Miser prior art...." Marston, slip op. at 22-23. Cf. J.P. Stevens & Co. v. Lex Tex. Ltd., 747 F.2d 1553, 1560, 223 USPQ 1089, 1092 (Fed.Cir.1984) ("Gross negligence is present when the actor, judged as a reasonable person in his position, should have known of the materiality of a withheld reference."), cert. denied, 474 U.S. 822 (1985).
 
 
 8
 Fibre Glass' argument on inequitable conduct ignores the board's finding, which the district court accepted, that the tie-rodless Marson Miser met only the lowest standard of materiality, that of 37 C.F.R. Sec. 1.56(a). Marston, slip op. at 16. The board doubted even that level of materiality, id. at 16 n. 13, found no intent to mislead, id. at 23, and weighed materiality and intent to conclude that no inequitable conduct had occurred, id. There was no clear error in the district court's acceptance of the board's findings.
 
 III. Infringement
 A. Claims 4, 8 and 9
 
 9
 The district court did not erroneously construe the asserted claims. Fibre Glass correctly states that the prosecution histories of the '934 patent show that Dynatron, to avoid prior art references, argued that its air release mechanism operated by deformation of some, but not all, lugs with no rupture elsewhere in the dispenser. The prosecution histories contain nothing that would preclude wrinkling of the dispenser top during that process, however, and nothing in the specification or claims precludes such wrinkling.
 
 
 10
 Fibre Glass, by citing only the testimony of its witnesses, has not shown clear error in the district court's finding that some lugs on Fibre Glass' dispenser stretch or deform to release excess air, as the asserted claims require. The district court relied on the testimony of Dynatron's expert, finding the conflicting testimony of Fibre Glass' expert "unconvincing." Slip op. at 19. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985).
 
 
 11
 Though some language in the district court's opinion suggests that it compared the accused dispenser with Dynatron's commercial dispenser, other language establishes that the court properly compared it with the claim language. The court found "[Fibre Glass'] dispenser duplicates [Dynatron's] product as described in these claims [4, 8 and 9]." Slip op. at 19.
 
 
 12
 Though the district court referred to Fibre Glass' interrogatory answers, Fibre Glass has not shown the finding of infringement was implausible in light of the record viewed in its entirety, and thus has not shown it to be clearly erroneous. Anderson, 470 U.S. at 574; Fed.R.Civ.P. 52(a). The part of the judgment based on the finding that Fibre Glass' dispenser literally infringes claims 4, 8 and 9 of the '934 patent must, therefore, be affirmed. We need not, therefore, reach Fibre Glass' argument on the doctrine of equivalents.
 
 B. Claims 2, 3 and 5-7
 
 13
 Claims 2, 3 and 5-7 are drawn to a combination of the dispenser of claims 4, 8 and 9 with attachments and a supporting stand. Fibre Glass has not shown clear error in the finding that, "If [Fibre Glass' attachment and stand] kit reaches a customer who uses it in connection with [Fibre Glass'] dispenser [Fibre Glass] is liable for inducing infringement of claims 2, 3 and 5-7 of the ['934 patent] under 35 U.S.C. 271(b)." Slip op. at 21. The district court cited testimony that Fibre Glass produced its kits for use with its dispensers and sold them with instructions for use with a dispenser. Such circumstantial evidence is sufficient to show infringement under 35 U.S.C. Sec. 271(b). Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272, 229 USPQ 805, 813 (Fed.Cir.1986), cert. denied, 107 S.Ct. 875 (1987). Moreover, Fibre Glass has shown no basis for overturning the finding that Fibre Glass' kit had no noninfringing uses. Slip op. at 21-22.
 
 
 14
 Fibre Glass has shown no error in the finding that "if [Fibre Glass'] kit reaches a customer who uses it in connection with [Dynatron's] dispenser, [Fibre Glass] has engaged in conduct proscribed by 35 U.S.C. 271(c)." Slip op. at 21. Fibre Glass' argument that buyers of the dispenser recited in claims 4, 8 and 9 have an implied license to practice the combination set forth in claims 2, 3 and 5-7, and thus do not directly infringe the latter claims, is stillborn. Each patent claim is a separate grant. That buyers of Dynatron's dispenser have an implied license under claims 4, 8 and 9 does not give them an implied license under claims 2, 3 and 5-7. Stukenborg v. United States, 372 F.2d 498, 504, 153 USPQ 292, 297 (Ct.Cl.1967); Priebe & Sons Co. v. Hunt, 188 F.2d 880, 885, 89 USPQ 299, 303 (8th Cir.), cert. dismissed, 342 U.S. 801 (1951).
 
 C. Intervening Rights
 
 15
 Dynatron originally sued Fibre Glass for infringing its U.S. Patent No. 3,957,176. In the '934 reissue patent, claims 1-5 remained identical, and claims 6-9 were amended to add limiting language like that in claims 2, 4 and 5. Because the district court correctly determined that Fibre Glass infringed claims 2, 4 and 5, we need not consider Fibre Glass' argument that it had intervening rights under 35 U.S.C. Sec. 252 as to claims 6-9.
 
 IV. Willfulness and Exceptional Case
 
 16
 The district court expressly based its ultimate finding of willful infringement on two findings: (1) Fibre Glass did not study the file history of Dynatron's original patent until 11 months after Dynatron filed suit, slip op. at 11, 24; and (2) Fibre Glass began producing its kit after Dynatron filed suit, id.
 
 
 17
 The district court also found, however, that: (3) Fibre Glass began selling its dispenser in 1974, two years before Dynatron's original patent issued, slip op. at 6; and (4) Fibre Glass' patent counsel responded less than three weeks after Dynatron told Fibre Glass about the original patent and charged infringement, slip op. at 10. Those findings show that, once Fibre Glass learned of Dynatron's patent in June 1976, it consulted counsel promptly. They do not support the finding that Fibre Glass "did not obtain counsel's advice until after it commenced its infringing activities," slip op. at 24. Moreover, although counsel did not study the file history until December 1978, the record shows that in January 1978, before Dynatron filed suit, counsel asserted that the Marson Miser anticipated Dynatron's invention, an assertion far from frivolous. Finally, although Fibre Glass began producing its kit after Dynatron filed suit, the suit was stayed for seven years during PTO reissue proceedings, in which Fibre Glass participated.
 
 
 18
 A determination of willful infringement requires reference to the "totality of the circumstances." Radio Steel & Mfg. Co. v. MTD Prods., Inc., 788 F.2d 1554, 1559, 229 USPQ 431, 434 (Fed.Cir.1986); Central Soya Co. v. George A. Hormel & Co., 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983). The totality of the circumstances appearing in the record and the district court's findings do not support its ultimate finding that Fibre Glass willfully infringed the '934 patent. Because that finding is not "plausible in light of the record viewed in its entirety," it is clearly erroneous and must be set aside. Anderson, 470 U.S. at 574; Fed.R.Civ.P. 52(a).
 
 
 19
 Because the finding of willfulness was clearly erroneous, the basis for the finding of exceptional case crumbles, slip op. at 24, and must also be deemed clearly erroneous. The award of increased damages and attorney fees thus constituted an abuse of discretion. Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582-83, 226 USPQ 821, 824 (Fed.Cir.1985).